

RECEIVED

DEC 16 2020

AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [UNDER SEAL],<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>[UNDER SEAL],<br><br>　　　　　　　　　　Defendant. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT [31 U.S.C. §§ 3729 *et seq.*]**<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b) (2)**<br><br>**JURY TRIAL DEMANDED** |

**DOCUMENT TO BE KEPT UNDER SEAL
DO NOT ENTER ON PACER**

Stephen S. Hasegawa*
shasegawa@pcsf.com
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel: (415) 836-9000
Fax: (415) 836-9001

Luke J. Diamond*
ldiamond@phillipsandcohen.com
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., NW
Washington, DC 20036
Tel: (202) 833-4567
Fax: (202) 833-1815

*Motion for admission Pro Hac Vice forthcoming*

Greg Busch
gbusch@the buschlawfirm.com
The Busch Law Firm
P.O. Box 105
South Orange, NJ 07079
Tel: (973) 327-4639
Fax: (973) 521-8595

*Counsel for Plaintiff Stephen Kitzinger*

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* STEPHEN KITZINGER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY PRACTICE GROUP OF NEW YORK, LLC d/b/a CITYMD<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT** [31 U.S.C. §§ 3729 *et seq.*]<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff-Relator Stephen Kitzinger, of 110 Mayhew Drive, South Orange, NJ 07079, through his attorneys, on behalf of the United States of America (the "Government"), for his Complaint against Defendant City Practice Group of New York, LLC d/b/a CityMD ("CityMD"), which has a principal place of business at 1345 Avenue of the Americas, Floor 8, New York, NY 10105, alleges based upon personal knowledge, relevant documents, and information and belief, as follows:

### I.  INTRODUCTION

1.  This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims knowingly made and caused to be made by Defendant and/or its agents and employees, in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("the FCA").

2

2. Defendant CityMD performs a substantial amount of COVID-19 testing-related services at its urgent care clinics in the States of New York and New Jersey. For at least some of its patients, CityMD falsely documents that the patient is uninsured, which allows CityMD to submit fraudulent claims for reimbursement to a limited fund of federal money that Congress has designated to fund COVID-19 testing of the uninsured.

3. In March and April 2020, as the COVID-19 crisis was rapidly escalating, Congress passed several bills appropriating money to fund COVID-19 testing and care for the uninsured. The money is disbursed through a program ("COVID-19 Uninsured Program") run by the Health Resources and Services Administration ("HRSA"), an agency within the United States Department of Health and Human Services ("HHS").

4. A patient's uninsured status is the defining requirement of the COVID-19 Uninsured Program. As such, HRSA requires that providers seeking reimbursement under the program attest, to the best of their knowledge, that each patient was actually uninsured at the time of care.

5. Defendant CityMD has fraudulently submitted reimbursement claims to the COVID-19 Uninsured Program for services provided to patients that CityMD knew had insurance.

6. Relator Kitzinger is one such patient. Upon arrival at CityMD for COVID-19 testing, Relator unambiguously disclosed that he was fully insured by entering both his primary and secondary insurance information on CityMD patient information forms on an electronic tablet provided to him at the clinic. However, when Relator later inquired about whether he owed a co-pay for the visit, a CityMD employee told him that no copay would be charged and that CityMD would delete his insurance information from CityMD's electronic health records system. Relator later reviewed his information in the CityMD patient portal, confirming that CityMD had deleted his insurance information and instead entered information indicating that Relator had no insurance.

7. Based on the employee's comfort and tone in stating that she was deleting Relator's insurance information, Relator is informed and believes that CityMD routinely falsifies insurance information, allowing CityMD to submit fraudulent claims for reimbursement to the COVID-19 Uninsured Program.

8. CityMD provides the specimens it collects from patients to third-party clinical laboratory partners to perform COVID-19 diagnostic testing. Those laboratories independently submit claims for payment based on the insurance information that CityMD provides. Because CityMD deleted Relator's primary and secondary insurance information and instead described Relator as "uninsured" in its patient records, it necessarily provided its clinical laboratory partner, Quest Diagnostics, with false information concerning Relator's insurance status, thus causing Quest to submit a false claim for reimbursement to the COVID-19 Uninsured Program. Relator is informed and believes that CityMD caused similar false claims by its laboratory partners with respect to other patients similarly situated to Relator, *i.e.*, insured patients who CityMD falsely described as uninsured for the purpose of obtaining reimbursement from the COVID-19 Uninsured Program.

9. Relator seeks through this action to end the illegal and harmful practices of the Defendant, and to recover all available damages, civil penalties, and other relief for the FCA violations alleged herein.

**II.   PARTIES**

10. *Qui tam* Plaintiff-Relator Stephen Kitzinger is a resident of the State of New Jersey.

11. Defendant City Practice Group of New York, LLC d/b/a CityMD ("CityMD") is a leading urgent care provider with more than 120 locations in New York, New Jersey, and Washington State. Its headquarters are located at 1345 Avenue of the

Americas, Floor 8, New York, NY 10105, and it is incorporated under the laws of the State of Delaware.

12. CityMD is a major provider of COVID-19 testing in the States of New York and New Jersey.

### III. JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

14. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants have minimum contacts with the United States.

15. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because one or more Defendants transact business in, and acts proscribed by 31 U.S.C. § 3729 were committed in, the District of New Jersey.

### IV. BACKGROUND

#### A. The False Claims Act

16. The False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, as amended, prohibits any person from knowingly making, or causing to be made, a false or fraudulent claim for payment to the United States. 31 U.S.C. § 3729(a)(1)(A). The FCA also prohibits knowingly making, using, or causing to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B). The FCA also prohibits knowingly making or using false records or statements material to an obligation to pay money to the United States or knowingly and improperly concealing or avoiding an obligation to pay money to the United States. 31 U.S.C. § 3729(a)(1)(G).

17. A false or fraudulent claim under the FCA may take many forms, "the most common of which is a claim for payment for goods and services not provided or

5

provided in violation of contract terms, specification, statute or regulation." False Clams Amendment Act of 1986, S. Rep. No. 99-345, at 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274.  The terms "false or fraudulent" have the same meaning as under the common law and extend to misrepresentations by omission.

18. The misrepresentation must be material, which the FCA defines as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

19. The FCA defines knowingly to include actual knowledge, reckless disregard, and deliberate ignorance.  31 U.S.C. § 3729(b)(1)(A).  No specific intent to defraud need be shown. 31 U.S.C. § 3729(b)(1)(B).

    **B.**    **COVID-19 and the COVID-19 Uninsured Program**

20. On January 31, 2020, the Secretary of the United States Department of Health and Human Services ("HHS"), Alex M. Azar II, pursuant to Section 319 of the Public Health Act, declared the existence of a nationwide public health emergency with regards to the 2019 Novel Coronavirus ("SARS-CoV-2") and the disease it causes, "coronavirus disease 2019" ("COVID-19"). *See* Determination of Public Health Emergency, 85 Fed. Reg. 7,316 (Feb. 7, 2020).

21. On March 13, 2020, President Donald J. Trump proclaimed the COVID-19 outbreak in the United States to be a national emergency under Sections 201 and 301 of the National Emergencies Act, retroactive to March 1, 2020. *See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).

22. Over the following weeks, Congress passed multiple bills in response to the rapidly unfolding crisis, with several containing appropriations to fund SARS-CoV-2 and COVID-19 related services for individuals without health insurance.

23. On March 18, 2020, Congress passed the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat 178 (2020), which appropriated

$1 billion "to pay the claims of providers for reimbursement … for health services consisting of SARS-CoV-2 or COVID-19 related items and services … for uninsured individuals." 134 Stat 178, 182.

24. This appropriation in FFCRA ("FFCRA Relief Fund") primarily targeted testing, defining covered services to include approved diagnostic and serologic (antibody) tests for the SARS-CoV-2 virus ("COVID-19 testing") and associated items and services furnished during a health care provider office visit, urgent care center visit, or emergency room visit that resulted in an order for COVID-19 testing. *Id.* at 201.

25. FFCRA defined "uninsured individuals" to mean individuals who are not enrolled in (1) a Federal health care program (as defined at 42 U.S.C. 1320a-7b(f)), or (2) a group health plan or health insurance coverage offered by a health insurer in the group or individual market (as defined at 42 U.S.C. 300gg-91), or a health plan offered under 5 U.S.C. § 8901 *et seq. Id.* at 182.

26. Later in March, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat 281 (2020), and in April, the Paycheck Protection Program and Health Care Enhancement Act ("PPPHCEA"), Pub. L. No. 116-139, 134 Stat 620 (2020). Combined, these two bills appropriated $175 billion for a "Provider Relief Fund," a portion of which is available to reimburse providers for treatment of uninsured individuals diagnosed with COVID-19. Once the FDA approves a COVID-19 vaccine, a portion of the Provider Relief Fund will also become available to reimburse vaccine administration to uninsured individuals.

27. PPPHCEA also included a second $1 billion appropriation to the FFCRA Relief Fund (COVID-19 testing). 134 Stat 620, 626.

### 1. The COVID-19 Uninsured Program

28. HHS and the Health Resources and Services Administration ("HRSA"), an agency within HHS, direct payments under the FFCRA Relief Fund (COVID-19 testing)

and the Provider Relief Fund (COVID-19 treatment and vaccination) through the COVID-19 Claims Reimbursement to Health Care Providers and Facilities for Testing, Treatment, and Vaccine Administration for the Uninsured Program ("COVID-19 Uninsured Program").

29. HRSA has contracted with UnitedHealth Group ("UnitedHealth") to be the sole administrator of the COVID-19 Uninsured Program. UnitedHealth maintains an online portal for the submission and administration of claims under the program ("COVID-19 Uninsured Program Portal").

30. To participate in the COVID-19 Uninsured Program, providers must enroll with UnitedHealth as a provider participant using their Taxpayer Identification Number ("TIN").

31. Participating providers must also attest to certain Terms and Conditions[1] to be eligible for reimbursement from the FFCRA Relief Fund (COVID-19 testing):

> I hereby attest to the following Terms and Conditions....
>
> The Recipient acknowledges that each time the Recipient submits claims for reimbursement, each claim must be in full compliance with these Terms and Conditions, and submission of those claims confirms the Recipient's ongoing compliance with these Terms and Conditions.
>
> The Recipient acknowledges that ... full compliance with all Terms and Conditions is material to the Secretary's decision to disburse funds to the Recipient....
>
> These Terms and Conditions apply directly to the Recipient. In general, the requirements that apply to the Recipient also apply to subrecipients and contractors, unless an exception is specified.
>
> FFCRA Relief Fund Payment Terms and Conditions
>
> ...

---

[1] Available at: https://coviduninsuredclaim.linkhealth.com/static/HRSA%20COVID-19%20Uninsured%20Program%20Terms%20and%20Conditions%20-%20Testing%20Services.pdf (last viewed 11/12/2020).

> ... The Recipient also certifies that to the best of its knowledge, the patients identified on the claim form were FFCRA Uninsured Individuals at the time the services were provided.
>
> ...
>
> The Recipient certifies that all information it provides as part of its application ... are true, accurate and complete, to the best of its knowledge. The Recipient acknowledges that any deliberate omission, misrepresentation, or falsification of any information contained in a request for reimbursement ... may be punishable by criminal, civil, or administrative penalties....

32. HRSA requires that providers attest to similar Terms and Conditions to be eligible for reimbursement from the Provider Relief Fund (COVID-19 treatment and vaccination).

33. Once enrolled, providers are eligible to submit claims for reimbursement under the program.

34. After providing services to one or more uninsured patients, providers can submit patient information through the COVID-19 Uninsured Program Portal, either individually or in batches. Each patient will be assigned a temporary member ID for use in submitting claims.

35. As described above, services provided to individuals with insurance are not eligible for reimbursement. Providers must verify and attest that to the best of their knowledge at the time of claim submission, the patient was uninsured at the time the services were provided. *See* HRSA, *COVID-19 Claims Reimbursement FAQ*, https://coviduninsuredclaim.linkhealth.com/frequently-asked-questions.html (last accessed 11/12/2020).

36. Once a temporary member ID has been assigned for the patient, providers can submit claims for reimbursement electronically using the 837 EDI transaction set, which is the electronic equivalent of the standard paper CMS 1500 claim form.

37. In general, reimbursement rates under the COVID-19 Uninsured Program are based on current year Medicare fee schedule rates. *Id.* COVID-19 testing and

9

specimen collection reimbursement rates are based on schedules published in the CARES Act and subsequent CMS interim final rules. *Id.*

## V.     ALLEGATIONS

38.     Based on Relator's first-hand experience, Relator alleges that Defendant CityMD has engaged, and regularly engages, in the practice of knowingly submitting false or fraudulent reimbursement claims to the COVID-19 Uninsured Program, and makes or uses false statements and records material to those false or fraudulent claims, for COVID-19 testing services that it provides to insured—as opposed to uninsured—patients. As described, *supra*, services provided to insured individuals are categorically ineligible for reimbursement under the COVID-19 Uninsured Program.

39.     In addition, as set forth below, Relator is informed and believes that CityMD refers specimens from those insured patients to its third-party clinical laboratory partners—falsely representing to the laboratories that the patients are uninsured. This causes the laboratories, which bill for laboratory testing independent of and in addition to any bills submitted by CityMD, to also submit false or fraudulent reimbursement claims to the COVID-19 Uninsured Program.

40.     In July 2020, Relator planned to take a trip with his extended family. Given the high rates of COVID-19 infection in his home state of New Jersey, Relator sought out COVID-19 testing prior to the trip to ensure that he would not infect family members.

41.     On July 13, 2020, Relator visited a CityMD urgent care center located at 2317 Center Island, US-22, Union, NJ 07083, to obtain COVID-19 testing.

42.     At check-in, Relator was furnished with a CityMD electronic tablet to enter routine patient information into CityMD's electronic health records system, including his name, allergies, and previous medical history. Relator also was prompted to enter information describing his current insurance coverage.

43. Relator entered his primary and secondary insurance information using CityMD's electronic tablet. He documented that he held both primary and secondary health insurance, entering all requested detail regarding the coverage, including insurer name and policy number.

44. Relator then spoke with a CityMD administrator, asking whether his insurance would require him to make a copayment for the visit. The administrator responded by informing Relator that he would not owe a copay and she was going to delete his insurance information from CityMD's records.

45. Relator has since used CityMD's patient portal to review records of his July 13, 2020 visit, and has confirmed that CityMD's records accurately reflect the information relating to that visit (including the information he entered at check-in, the services CityMD provided, and the diagnosis provided to him during the visit), with one exception: the insurance information he entered on the electronic tablet that CityMD provided during his office visit was missing, and instead was replaced with an entry recording his insurance "Payer Name" as "Uninsured Insurance" and a "Payer Address" of "UPP1 New York NY 10105." CityMD knew that this information was false, since its representative stated that CityMD intended to erase the insurance information that Relator entered.

46. Based on the administrator's comfort and tone regarding the deletion of Relator's insurance information, Relator inferred that the deletion of insurance information for insured patients obtaining COVID-19 tests was a routine occurrence at CityMD.

47. Relator was subsequently evaluated, and a nasopharyngeal swab was performed to collect a specimen for a COVID-19 RT-PCR test. According to information in CityMD's patient portal, such evaluation and swab were performed by Physician Assistant Sarah Abdeldiem.

11

48. After Relator's visit concluded, CityMD referred Relator's specimen for testing to Quest Diagnostics, a national clinical laboratory, to perform the RT-PCR test. Because CityMD deleted Relator's insurance information from its records relating to Relator, it necessarily must have provided Quest Diagnostics with the insurance information that remained in CityMD electronic health records system—*i.e.*, information falsely reporting that Relator was uninsured.

49. On July 21, 2020, CityMD texted Relator, notifying him that his COVID-19 test results were available through the online CityMD electronic health record patient portal. Relator accessed the portal and was able to view his negative COVID-19 test result.

50. Relator never received any bill or Explanation of Benefits from CityMD, Quest Diagnostics, or his insurers for the COVID-19 testing or testing-related services.

51. Based upon the foregoing information, Relator alleges that CityMD submitted a knowingly false claim for reimbursement to the COVID-19 Uninsured Program for Relator's COVID-19 testing-related services, and routinely does the same for some other insured patients.

52. Based upon the foregoing information, Relator also is informed and believes that CityMD caused Quest Diagnostics to submit a false claim for reimbursement to the COVID-19 Uninsured Program for Relator's RT-PCR COVID-19 diagnostic test. Because CityMD erased Relator's primary and secondary information from its records and instead identified Relator as "uninsured," it could not have forwarded his insurance information to Quest Diagnostics to enable Quest to bill Relator's insurers. CityMD's conduct would similarly cause its laboratory partners to submit false claims to the COVID-19 Uninsured Program for all other insured patients who CityMD falsely recorded as "uninsured" for the purpose of COVID-19 testing-related services.

53. In accordance with the explicit provisions of FFCRA, and as stated in the Terms and Conditions, *supra*, that HRSA required CityMD to review and sign to participate in the COVID-19 Uninsured Program, the Government will not reimburse claims under the program for individuals that it knows to be insured. CityMD's false statements and/or records representing that Relator and other insured patients are uninsured are material to the Government's decisions to reimburse claims under the program.

54. In addition, CityMD's conduct is material because "the investigation and prosecution of Coronavirus-related fraud schemes" is a stated priority of federal law enforcement. *See* Press Release 20-331, Department of Justice, *Attorney General William P. Barr Urges American Public to Report COVID-19 Fraud* (Mar. 20, 2020); Press Release 20-113, U.S. Attorney's Office – New Jersey, *U.S. Attorney Carpenito, AG Grewal, Acting Comptroller Walsh, Announce Federal-State COVID-19 Fraud Task Force* (Mar. 30, 2020). Already, the Department of Justice has brought more than one hundred indictments nationwide, including at least nine by the U.S. Attorney's Office for the District of New Jersey, for misconduct relating to COVID-19 health and economic relief programs. *See CARES Act Fraud Tracker*, Arnold & Porter, https://www.arnoldporter.com/en/general/cares-act-fraud-tracker (last accessed: Nov. 20, 2020).

### COUNT I

### Violations of the False Claims Act
### 31 U.S.C. §§ 3729(a) (1) (A)-(B), & (G)

55. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

56. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-33.

57. By and through the acts described above, Defendant knowingly presented, and/or caused to be presented, false or fraudulent claims for payment to the United States, in violation of 31 U.S.C. § 3729(a)(1)(A).

58. By and through the acts described above, Defendant knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

59. By and through the acts described above, Defendant knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the government, in violation of 31 U.S.C. § 3729(a)(1)(G).

60. The United States, unaware of the falsity of the records, statements, and claims that Defendant made or caused to be made, paid and continues to pay claims that would not be paid but for Defendant's illegal conduct.

61. The United States, unaware that Defendant was knowingly concealing and/or knowingly seeking to avoid or decrease its obligation to pay or transmit money or property to the government, did not collect from Defendant monies that it would have collected but for Defendant's unlawful conduct.

62. Defendant has damaged, and continues to damage, the United States in a substantial amount to be determined at trial.

63. Additionally, the United States is entitled to the maximum penalty under 31 U.S.C. § 3729, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

## PRAYER

WHEREFORE, *qui tam* Plaintiff-Relator Stephen Kitzinger prays for judgment against Defendant as follows:

1. That Defendant cease and desist from violating 31 U.S.C. §§ 3729-33;

2. That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus the maximum civil penalty permitted for each violation of the False Claims Act;

3. That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

4. That Relator be awarded all fees, costs, and expenses incurred in connection with this action, including attorneys' fees, costs, and expenses; and

5. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully Submitted,

**THE BUSCH LAW FIRM**

By: _____
Gregory A. Busch
*Attorneys for Plaintiff-Relator*
Stephen Kitzinger
P.O. Box 105
South Orange, New Jersey 07079
T: (973) 327-4639
F: (973) 521-8595
gbusch@thebuschlawfirm.com

Dated: December 16, 2020